**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| JOHNSON CONTROLS BUILDING SOLUTIONS, LLC, a Delaware limited liability company, and JOHNSON CONTROLS TYCO IP HOLDINGS, LLP, a Wisconsin limited liability partnership,<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS, INC., a Korean business entity, and LG ELECTRONICS U.S.A., INC., a Delaware corporation.<br><br>Defendants. | Civil Action No. 2:26-cv-1019<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Johnson Controls Building Solutions, LLC ("JCBS") and Johnson Controls Tyco IP Holdings, LLP ("JCTIPH") (together, "Plaintiffs," and together with affiliated companies, "Johnson Controls") file this Complaint for patent infringement against Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (together, "Defendants" or "LG").

## INTRODUCTION

1. For over one hundred and forty years, Johnson Controls has invested in developing advanced technology for thermal management, mission-critical building systems, energy efficiency, and decarbonization, with a focus on increasing sustainability through its innovative solutions. Johnson Controls, through its YORK brand and with substantial

investment, has developed a robust line of energy-efficient chiller equipment to cool large buildings, which has become increasingly important to the functioning, efficiency, and sustainability of data centers.

2. JCBS recently launched the YDAM Air-Cooled Magnetic Bearing Centrifugal Chiller ("YDAM"), which delivers up to 3.5MW of cooling in a compact footprint, with up to 20% higher capacity density than comparable solutions, while maintaining high-efficiency performance. As data centers run more powerful computing equipment, they require more cooling without expanding their footprint. The YDAM delivers more cooling within the same footprint, allowing operators to increase capacity while reducing the amount of equipment required on-site. Fast Company recognized the YDAM's efficient and powerful design with a 2026 Innovation by Design award. Time Magazine also recognized the YDAM as one of "the Best Inventions of 2026."

3. Plaintiffs' intellectual property protects critical features of the YDAM arising from the investments in this important technology. The inventions of U.S. Patent No. 9,869,487 ("the '487 patent"), attached hereto as Exhibit 1, were conceived by Johnson Controls employees and are directed to a novel heat exchanger technology used in air-cooled chillers, including independent condensers and stacked coil sections allowing for greater efficiency and effectiveness. Data centers employing chillers that practice the '487 patent achieve more cooling with less water consumption and smaller footprints. The YDAM embodies the '487 patent's inventions.

4. LG has recently announced an Air-Cooled Magnetic Bearing Centrifugal Chiller with Free-Cooling ("LG Chiller") and a supply agreement to import and sell it into the United States. LG's public descriptions demonstrate that the LG Chiller infringes the '487 patent. Sales

of the infringing LG Chillers will negatively impact sales of JCBS's patented YDAM chiller. To protect the investments in critical technology and corresponding patented inventions, Plaintiffs bring this action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, to address LG's current and ongoing infringement of the '487 patent.

5. LG has infringed and/or continues to infringe the '487 patent, directly and indirectly, by: (1) making, using, testing, selling, offering for sale, and/or importing into the United States, the LG Chillers; (2) at least from the date of filing of this Complaint, inducing third parties to use, sell, offer for sale, import into the United States, and/or use, the LG Chillers, with knowledge of the '487 patent and of the third parties' direct infringement resulting therefrom; and/or (3) at least from the date of filing of this Complaint, contributing to direct infringement of the '487 patent by third parties, including its customers and other importers, resellers, and end users in LG's supply chain.

6. Plaintiffs seek damages, including past damages, and other relief, including injunctive relief, for LG's infringement of the '487 patent.

**THE PARTIES**

7. Plaintiff Johnson Controls Building Solutions, LLC, is a limited liability company organized and existing under the laws of the State of Delaware, with offices at 5757 N. Green Bay Avenue, Glendale, Wisconsin, 53209.

8. Plaintiff Johnson Controls Tyco IP Holdings, LLP, is a limited liability partnership organized and existing under the law of the State of Wisconsin, with offices at 5757 N. Green Bay Avenue, Glendale, Wisconsin, 53209.

9. On information and belief, Defendant LG Electronics, Inc. ("LGE") is a corporation organized and existing under the laws of the Republic of Korea, having a principal

place of business at LG Twin Towers, 128 Yeoui-daero, Yeongdeungpo-gu, Seoul 07336, Republic of Korea.

10. On information and belief, Defendant LG Electronics U.S.A., Inc. ("LGEUS") is a corporation organized and existing under the laws of the state of Delaware, having a principal place of business at 111 Sylvan Ave, Englewood Cliffs, NJ, 07632-1514.

**JURISDICTION AND VENUE**

11. This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13. This Court has specific and personal jurisdiction over each of the Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long-Arm Statute. Tex. Civ. Prac. & Rem. Code § 17.042. On information and belief, each Defendant has sufficient minimum contacts with the forum because each Defendant transacts substantial business in the State of Texas and in this District.

14. LG has (itself and/or through subsidiaries, affiliates, or intermediaries) committed acts of patent infringement in the United States, the State of Texas, and this District, including by making, using, offering to sell, selling and/or importing infringing LG Chillers in the United States, the State of Texas, and this District, inducing others to commit acts of patent infringement in the United States, the State of Texas, and this District, and/or contributing to direct infringement by third parties in the United States, the State of Texas, and this District.

15. On information and belief, LG knows or should reasonably expect that the LG Chillers are sold in the United States, including in Texas (the U.S. state with the second-highest

population) and this District. On information and belief, LG knows or should reasonably expect that LG's distribution channel—comprising its subsidiaries—is arranged in a way that a termination point of the channel includes the State of Texas and/or this District, including through the supply agreement with AIR Control Concepts described in greater detail below. On information and belief, LG knows or should reasonably expect that the LG Chillers are offered for sale throughout the United States, including in the State of Texas and in this District.

16. Accordingly, each Defendant has established minimum contacts within the forum and purposefully availed itself of the benefits of Texas, and the exercise of personal jurisdiction over LG would not offend traditional notions of fair play and substantial justice. In addition, or in the alternative, this Court has personal jurisdiction over LG pursuant to Federal Rule of Civil Procedure 4(k)(2).

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because LGE does not reside in the United States and thus may be sued in any judicial district in the United States.

18. Venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391(b) and (c) because LGE and LGEUS are subject to personal jurisdiction in this District and have committed acts of patent infringement in this District. On information and belief, LG makes, uses, sells, and/or offers to sell infringing products within this District, regularly does and solicits business in this District, and has the requisite minimum contacts with the District such that this venue is a fair and reasonable one. Further, LGE and LGEUS have admitted or not contested proper venue in this District in other patent infringement actions.

19. Venue is proper in this district as to LGEUS pursuant to 28 U.S.C. §§ 1400(b) and 1391(b) and (c) because LGEUS maintains multiple regular and established places of business

within this District. On information and belief, LGEUS maintains properties at both 2153-2155 Eagle Parkway, Fort Worth, Texas 76177 and 14901 Beach Street, Fort Worth, Texas 76177, each in this District. Tax records for Denton County identify the properties as belonging to LGEUS and as having uses for retail parts and as an electronics warehouse, respectively.

## FACTUAL BACKGROUND

### I. Plaintiffs and the ’487 Patent

20. Johnson Controls was originally incorporated in Wisconsin in 1885 as Johnson Electric Service Company to manufacture, install, and service automatic temperature regulation systems for buildings, and in 1974, was renamed Johnson Controls. Over the course of its nearly 150 years in business, Johnson Controls has become a global leader in thermal management, mission-critical building systems, energy efficiency, and decarbonization. Johnson Controls employs thousands of people across the United States, including over 2,800 in the State of Texas.

21. In 2005, Johnson Controls acquired York International, a global supplier of heating, ventilating, and air conditioning and refrigeration equipment and services. Johnson Controls continues to substantially invest in, develop, and market York-branded machinery and is committed to deploying high performing air-cooled chillers (such as the YDAM) that provide closed-loop cooling for data centers. Fast Company identified the YDAM as a 2026 Innovation by Design Award honoree. Further, Time Magazine named the YDAM a “Best Invention of 2026,” based on its ability to deliver “3.5 megawatts of chilling capacity” via its small footprint—“compact enough to fit on a standard flatbed trailer”—while requiring “zero on-site water.”

22. Plaintiff Johnson Controls Tyco IP Holdings, LLP holds title to the ’487 patent. Plaintiff Johnson Controls Building Solutions, LLC is the exclusive licensee of the ’487 patent,

including the exclusive right to bring suit with respect to any past, present, and future infringement thereof.

23. The ’487 patent, entitled “Heat exchanger having stacked coil sections,” was duly and legally issued on January 16, 2018, from a patent application filed February 11, 2011, with Glenn Eugene Nickey, Ian Michael Casper, William L. Kopko, Michael Lee Buckley, and Mustafa Kemal Yanik as the named inventors. The ’487 patent claims priority to provisional application No. 61/302,333, filed on February 8, 2010. The claimed inventions relate to heat exchangers and air-cooled condensers for a heating, ventilation, air-conditioning, and refrigeration (HVAC&R) system having stacked coil sections operating at different condensing temperatures and pressures. By employing stacked coil sections with varying condenser temperatures, the air-cooled chillers can occupy a smaller footprint while maintaining high performance and high capacity. The YDAM practices the ’487 patent.

24. The ’487 patent is valid and enforceable.

25. LG is not authorized to practice the ’487 patent.

## II. LG

26. LG is a global leader in consumer appliances as well as commercial and industrial products, with four business units: Home Appliance Solutions including kitchen and home appliances, Media Entertainment Solutions including televisions, laptops, and monitors/displays, Vehicle Solutions including “infotainment,” powertrains, lighting, and vehicle software, and Eco Solutions, including HVAC equipment such as for industrial and/or commercial applications.

27. LG had global revenues of approximately $66.5 billion across all product lines in 2025. LG has reported that its “first-half orders for data center cooling solutions exceeded $428

million," with cooling solutions orders expected to reach "several billion dollars" by end of year 2026.

28. LG targets the United States for its sales. For example, LG established LGEUS as its U.S. headquarters, to bring a full range of electronics, appliances, and equipment into the North American market. LGE owns 100% of LGEUS. *See* LGE 2026 Q2 Interim Consolidated Financial Statements Report, 15. LG has publicized its plans to expand its footprint in the United States market, including as to sales of cooling solutions including chillers for data centers.

29. On information and belief, LGEUS is an extension of LGE, and as subsidiary serves to execute LGE's U.S. business strategy for LGE's product offerings including chillers and HVAC equipment.

30. On information and belief, LG designs, manufactures, uses, offers for sale, sells, and/or imports into the United States—including into the Eastern District of Texas—billions of dollars of consumer and industrial appliances every year. On information and belief, this includes the LG Chillers.

31. On October 5, 2026, LG issued a press release describing that LGEUS had executed a supply agreement with AIR Control Concepts, specifically intended to supply the LG Chillers ("LG Air-Cooled Centrifugal Chiller designed for AI data centers") to data centers in the United States. LG stated that the "agreement supports a large-scale, multi-year chiller supply program supporting data centers with more than 5 GW of capacity." On information and belief, through this agreement and otherwise, LG intends to sell the infringing chillers to customers across the United States, including in the State of Texas, through sales to at least AIR Control Concepts and Texas AirSystems.

32. Thus, LG—directly and/or through its subsidiaries, affiliates, or intermediaries—has imported, offered to sell, and/or sold, and continues to import, offer to sell, and/or sell infringing products in the United States through established distribution channels. LG intends to sell and does sell infringing products in the United States, the State of Texas, and this District.

### III. LG's Direct Infringement and the Accused Instrumentalities

33. LG has directly infringed, and/or continues to infringe, pursuant to 35 U.S.C. § 271(a), one or more claims of the '487 patent (as further specified below in Count I) by making, using, testing, offering to sell, selling within the United States, and/or importing into the United States, infringing HVAC equipment (the "Accused Instrumentalities"). The Accused Instrumentalities include at least the LG Chillers and the variations represented by the model numbers listed in the 2026 LG Air-Cooled Magnetic Bearing Centrifugal Chiller Catalogue ("2026 Catalogue") at 14-17, *available at* https://www.lg.com/content/dam/channelbtb/lgcom/global/es/chiller/centrifugal/centrifugal/2026/air-cooled-centrifugal-chiller/gp1/resource/centrifugal-common-2026-catalogue-brochure-lg-air-cooled-magnetic-bearing-centrifugal-chiller-catalogue.pdf (last accessed November 9, 2026).

34. On information and belief, LG manufactures Accused Instrumentalities abroad and sells and/or imports Accused Instrumentalities into the United States, as demonstrated by at least the supply agreement LG entered into with AIR Control Concepts.

35. On information and belief, LG imports, offers to sell, and sells Accused Instrumentalities in the United States and provides Accused Instrumentalities to third parties for sale in the United States, and LG actively targets the U.S. market for sales of the Accused Instrumentalities. For example, on information and belief, LG sells the Accused Instrumentalities to customers for use in AI data centers, and those sales occur in the United States. For example,

LG sells infringing chillers, a subset of the Accused Instrumentalities, to AIR Control Concepts for use in data centers in the United States.

36. The above-described acts of direct infringement committed by LG have caused and will continue to cause injury and damage to Plaintiff.

**IV. Actual Notice of Infringement to LG**

37. Plaintiffs provided to LG actual notice of LG's infringement of the '487 patent by filing of this Complaint.

38. LG continues to directly and indirectly infringe the '487 patent after having received actual notice of LG's infringement.

39. Plaintiffs provided actual notice of LG's infringement and identified exemplary Accused Instrumentalities. At least as of this Complaint, LG knows or should know of the '487 patent and that its conduct and the conduct of its customers and end users infringes the '487 patent. LG's continued and continuing direct and indirect infringement was and is deliberate and intentional. LG has therefore willfully infringed the '487 patent at least since Plaintiffs identified the '487 patent and its infringement to LG.

**V. LG's Indirect Infringement**

40. LG has indirectly infringed and continues to indirectly infringe the '487 patent by inducing infringement by third parties under 35 U.S.C. § 271(b), including LG's customers that incorporate the Accused Instrumentalities into AI data centers or other industrial and/or commercial environments in the United States. For example, LG has contracted to sell the Accused Instrumentalities to AIR Control Concepts, for incorporation into AIR Control Concept's customers' AI data centers in the United States, including on information and belief in

the State of Texas and in this District, and LG intends that the Accused Instrumentalities will be sold and used in the United States through at least AIR Control Concepts and Texas AirSystems.

41. LG knew and specifically intended that its customers and other importers, resellers, and end users in LG's supply chain would sell and/or use infringing products in the United States and/or cause Accused Instrumentalities to be sold and/or used in the United States—or deliberately avoided learning of the infringing circumstances so as to be willfully blind to the infringement that was induced. LG specifically intended that its customers and other importers, resellers, and end users in LG's supply chain would make, use, sell, or offer to sell Accused Instrumentalities in the United States, or import LG Accused Instrumentalities into the United States, as discussed in § III above.

42. LG has induced others' direct infringement despite actual notice that the Accused Instrumentalities infringe the '487 patent, as described herein. LG therefore has caused its third-party customers and other importers, resellers, and end users in LG's supply chain to directly infringe the '487 patent with knowledge of the '487 patent and specific intent that the customers would directly infringe, or deliberately avoided learning of the infringing circumstances so as to be willfully blind to the infringement that was induced.

43. LG also has contributed to and continues to contribute to direct infringement of the '487 patent by third parties, including its customers and other importers, resellers, and end users in LG's supply chain, in violation of 35 U.S.C. § 271(c). LG offers to sell, sells, and/or imports into the United States the Accused Instrumentalities, to the extent considered components of the patented system. These Accused Instrumentalities, to the extent not considered the full claimed system, constitute a material part of the infringing third-party vapor compression system (cooling system) into which they are incorporated. LG knew that those

Accused Instrumentalities were especially made for use in infringing the ’487 patent after receiving actual notice the ’487 patent. The Accused Instrumentalities that are incorporated into these third-party cooling systems have no substantial non-infringing use outside of those devices.

44. LG specifically intends to cause the acts constituting direct infringement because it derives significant revenue by selling LG Accused Instrumentalities to third parties who directly infringe one or more claims of the ’487 patent. On information and belief, LG’s sales of Accused Instrumentalities have exceeded $428 million, with a 2027 revenue target of $680 million. As discussed in § II, LG specifically targets the United States market as a destination for sales of the Accused Instrumentalities, actively seeks to develop strategic brand customer relationships with third parties that sell devices incorporating the Accused Instrumentalities to end users in the United States, and provides services to its existing brand costumers in the United States.

45. The above-described acts of indirect infringement committed by LG have caused and will continue to cause injury and damage to Plaintiff, and will cause additional severe and irreparable injury and damages in the future.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,869,487**

46. The allegations set forth in the foregoing paragraphs of this Complaint are incorporated by reference as though fully set forth herein.

47. Pursuant to 35 U.S.C. § 282, the ’487 patent is presumed valid.

48. LG has directly infringed and continues to infringe one or more claims of the ’487 patent in violation of 35 U.S.C. § 271(a). The infringing products are the Accused Instrumentalities. The LG Chiller, described below, provides a representative example Accused Instrumentality demonstrating LG’s infringement of the ’487 patent.

49. The Accused Instrumentalities comprise the vapor compression system of at least claims 1-2 of the ’487 patent.

50. The following paragraphs describe the manner in which the Accused Instrumentalities infringe claims 1-2 of the ’487 patent, by way of the exemplary LG Chiller (the Air-Cooled Magnetic Bearing Centrifugal Chiller with Free-Cooling).

51. On information and belief, the Accused Instrumentalities are in relevant part substantially similar to the exemplary LG Chiller, in particular with regard to the manner in which the Accused Instrumentalities include and utilize multiple circuits, condensers, evaporators, and temperatures. The following paragraphs are thus illustrative of the manner in which each of the Accused Instrumentalities infringes.

52. Claim 1. The LG Chiller is a vapor compression system.




2026 Catalogue at 10.


Magnetic Bearing Compressor

Powered by LG's oil-free magnetic bearing compressor technology, the chiller delivers exceptional efficiency, superior reliability, and simplified maintenance. Designed for data center applications, it provides lower lifecycle costs and maximum system availability.

2026 Catalogue at 11.




2026 Catalogue at 9.




2026 Catalogue at 9.

53. The LG Chiller includes a first circuit to circulate a first refrigerant including a first compressor and first evaporator in fluid communication. As shown by LG's materials, the chiller has a two-circuit structure through which the refrigerant R-513A passes:

**Series Counter Flow Design**

The series counter-flow design reduces and evenly distributes the head load across Compressors A and B, optimizing compressor operation and delivering maximum efficiency.




2026 Catalogue at 10 (annotations added).

- Two independent refrigeration circuits provide backup operation in case of compressor failure.
- Lead / Lag control equalizes compressor run time, extending compressor life

2026 Catalogue at 10 (annotations added).

Air-cooled centrifugal chillers include integrated free-cooling . Using the low-GWP refrigerant R-513A, they feature inverter, oil-free centrifugal compressors, falling film evaporators, and micro-channel heat exchangers, enabling high-efficiency operation even at partial loads.

2026 Catalogue at 8 (annotations added).

54. Likewise, the LG Chiller includes a second circuit to circulate a second refrigerant including a second compressor and second evaporator in fluid communication, as shown by the same materials cited above:




2026 Catalogue at 10 (annotations added); *see also supra*, ¶53.

55. The LG Chiller also includes a first and second evaporator configured and positioned to exchange heat from a single process fluid:




2026 Catalogue at 10 (annotations added).

56. The LG Chiller includes at least one air moving device to circulate air through the first condenser and then the second condenser.



2026 Catalogue at 9 (annotations added).

**Series Counter Flow Design**

The series counter-flow design reduces and evenly distributes the head load across Compressors A and B, optimizing compressor operation and delivering maximum efficiency.




2026 Catalogue at 10 (annotations added).

57. The LG Chiller includes a first condenser and a second condenser that each comprise a plurality of sections, where each section of the first condenser is positioned next to and substantially parallel to a corresponding section of the second condenser:

**Refrigerant Free-Cooling**

The refrigerant free-cooling system features a double-stacked heat exchanger that serves as a condenser during mechanical cooling operation, enhancing overall efficiency. In full free-cooling mode, a refrigerant pump circulates the refrigerant directly, eliminating the need for glycol and reducing annual PUE.

2026 Catalogue at 9 (annotations added).




2026 Catalogue at 10 (annotations added).

> 6) The condensing coil shall consist of a V-shaped, two row heat exchanger. When operating as a condenser, each coil section shall function as an independent condenser corresponding to each refrigeration circuit. When operating in free cooling mode, the same coil shall serve as a free cooling coil for heat exchange with ambient air.

2026 Catalogue at 20.

58. The LG Chiller includes corresponding sections of first and second condensers that are thermally separate from each other.




2026 Catalogue at 10 (annotations added).

> 6) The condensing coil shall consist of a V-shaped, two row heat exchanger. When operating as a condenser, each coil section shall function as an independent condenser corresponding to each refrigeration circuit. When operating in free cooling mode, the same coil shall serve as a free cooling coil for heat exchange with ambient air.

2026 Catalogue at 20.

59. The LG Chiller includes condensing temperatures for refrigerant passing through the condensers, where the condensing temperature of the first condenser in the flow is lower than the temperature of the second condenser in the flow, as the temperature in the first condenser (Condenser B) is shown to be between 40°C and 44°C, and the temperature in the second condenser (Condenser A) is shown to be between 44°C and 48°C:

**Series Counter Flow Design**

The series counter-flow design reduces and evenly distributes the head load across Compressors A and B, optimizing compressor operation and delivering maximum efficiency.




2026 Catalogue at 10 (annotations added).

60. Claim 2. The LG Chiller includes first and second condensers containing sections, where the sections of the first and second condensers use common structural components and are assembled as part of a packaged unit. For example, the "double-stacked heat exchanger that serves as a condenser" is positioned beneath a fan assembly built into the same structure:

**Refrigerant Free-Cooling**

The refrigerant free-cooling system features a double-stacked heat exchanger that serves as a condenser during mechanical cooling operation, enhancing overall efficiency. In full free-cooling mode, a refrigerant pump circulates the refrigerant directly, eliminating the need for glycol and reducing annual PUE.

2026 Catalogue at 9 (annotations added).




2026 Catalogue at 10 (annotations added).




2026 Catalogue at 9 (annotations added).

> **2.2. Equipment Description**
>
> Provide, install, and commission air-cooled centrifugal compressor chiller(s) as shown on the drawings and schedules. The chiller(s) shall be completely factory-assembled and operationally tested prior to delivery.
>
> Chiller shall include two refrigeration circuits arranged in a series-counter flow configuration, semi-hermetic oil-free magnetic centrifugal compressors, shell-and-tube water coolers, a double-stacked air-cooled condenser also serving as a free-cooling coil, a refrigerant circulation pump, refrigerant R-513A, all interconnecting piping and wiring, and a lockable control center housing all safety, operating, and capacity controls required for the safe and fully automatic operation of the water chiller.

2026 Catalogue at 19.

> **1.4. Delivery and Handling**
>
> The unit shall be delivered to the jobsite fully assembled by the manufacturer or the manufacturer's authorized agent, and shall be handled, transported, and stored in accordance with the manufacturer's instructions.

2026 Catalogue at 19 (annotations added).

61. The Accused Instrumentalities directly infringe at least claims 1-2 of the ’487 patent at least in the manner described in the paragraphs above. Plaintiff’s allegations of infringement are not limited to claims 1-2, and additional infringed claims will be identified and disclosed through discovery and infringement contentions.

62. Defendants have actual notice pursuant to 35 U.S.C. § 287(a) of the ’487 patent and the infringement alleged herein at least upon the filing of this Complaint.

63. The YDAM, which is sold by JCBS, embodies the ’487 patent claims. Plaintiffs provide notice that the YDAM practices the ’487 patent via a website (https://www.johnsoncontrols.com/legal/patents) and will mark all YDAM units delivered to customers consistent with the marking requirement of 35 U.S.C. § 287(a).

64. LG has indirectly infringed and continues to indirectly infringe the ’487 patent by actively inducing, in violation of 35 U.S.C. § 271(b), the direct infringement of others of the ’487 patent in the United States.

65. LG induces, through affirmative acts, its customers and other third parties, such as retailers and end users, to directly infringe the ’487 patent by using, offering to sell, selling within the United States, and/or importing into the United States those Accused Instrumentalities, which infringe the ’487 patent.

66. On information and belief, LG actively promoted and promotes the Accused Instrumentalities for the U.S. market.

67. LG knows that its customers will offer to sell, sell, and/or use infringing Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold and/or used in the United States, and LG specifically intends for its customers to purchase Accused Instrumentalities and offer to sell, sell, and/or use the Accused Instrumentalities in the United States or cause Accused Instrumentalities to be sold in the United States. LG’s customers directly infringe the ’487 patent by importing the Accused Instrumentalities into the United States, selling the Accused Instrumentalities in the United States, offering to sell the Accused Instrumentalities in the United States, and/or using the Accused Instrumentalities in the United States.

68. LG has indirectly infringed and continues to indirectly infringe the ’487 patent by contributing, in violation of 35 U.S.C. § 271(c), to the direct infringement of the ’487 patent by others in the United States, specifically, by offering to sell, selling, and/or importing into the United States components (Accused Instrumentalities) of a claimed vapor compression system (*see, e.g.*, claim 1).

69. LG's direct and indirect infringement of the '487 patent is ongoing.

70. The above-described acts of infringement have caused and continue to cause injury and damage to Plaintiff, and will cause additional severe and irreparable injury and damages in the future.

71. LG's ongoing infringement is willful, at least as of the date of filing of this Complaint.

72. Plaintiffs are entitled to recover damages sustained as a result of LG's willful infringement in an amount subject to proof at trial, but in no event less than a reasonable royalty.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment that Defendants have infringed one or more claims of the '487 patent and continue to infringe those claims, and that such infringement is willful;

B. Enter an order, pursuant to 35 U.S.C. § 284, awarding to Plaintiffs monetary relief in an amount adequate to compensate for LG's infringement of the '487 patent, in an amount to be determined at trial, but not less than a reasonable royalty and/or to compensate Plaintiffs for the lost profits attributable to LG's infringement, as well as pre- and post-judgment interest and costs and enhanced damages for LG's willful infringement of the '487 patent;

C. Enter an order that LG pay to Plaintiffs ongoing royalties in an amount to be determined for any infringement occurring after the date that judgment is entered;

D. Enter an order, pursuant to 35 U.S.C. § 285, declaring this to be an exceptional case and thereby awarding to Plaintiffs their reasonable attorneys' fees;

E. Enter an order awarding to Plaintiffs preliminary and permanent injunctive relief enjoining LG's ongoing patent infringement; and

F. Enter an order awarding to Plaintiffs such other and further relief, whether at law or in equity, that this Court deems just, equitable, and proper.

Dated: November 9, 2026

Respectfully submitted,

By: */s/ Aaron R. Fahrenkrog by permission Andrea L. Fair*

Aaron R. Fahrenkrog (admitted in this District)
LEAD ATTORNEY
MN Bar No. 0386673
afahrenkrog@robinskaplan.com
Logan J. Drew
MN Bar No. 0389449 (admitted in this District)
ldrew@robinskaplan.com
Sharon E. Roberg-Perez
MN Bar No. 0348272 (to appear *pro hac vice*)
sroberg-perez@robinskaplan.com
Demitri M. Dawson
MN Bar No. 0505761 (to appear *pro hac vice*)
ddawson@robinskaplan.com
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
(612) 349-8500 (telephone)
(612) 339-4181 (facsimile)

Rebecca Bact
MA Bar No. 682411 (to appear *pro hac vice*)
rbact@robinskaplan.com
**ROBINS KAPLAN LLP**
800 Boylston Street, Suite 2500
Boston, MA 02199
(617) 267-2300 (telephone)
(617) 267-8288 (facsimile)

Andrea L. Fair
Texas State Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish

Texas State Bar No. 24125824
garrett@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

*Attorneys for Plaintiffs Johnson Controls Building Solutions, LLC and Johnson Controls Tyco IP Holdings, LLP.*